RUMPTZ *v.* LEAHEY

1. INSURANCE—PERSONAL INJURY ACTION—REFERENCE TO COVERAGE.
The insurer shall not be made or joined as a party defendant, nor shall any reference whatever be made to such insurer or to the question of carrying of such insurance during the course of trial (MCLA § 500.3030).

2. INSURANCE—PERSONAL INJURY ACTION—WITNESSES' IMPEACHMENT.
The fact, brought out on cross-examination, that defendant's witness, a physician, testified for an insurance company in a prior case was not reversible error where the purpose of the questioning was impeachment and the questioning did not convey or suggest to the jury that the defendant in this case was insured.

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 44 Am Jur 2d, Insurance §§ 1575, 1578.
Joinder of cause of action against party causing injury with cause of action against latter's insurer or indemnitor. 7 ALR 1003.
[2] 31 Am Jur 2d, Expert and Opinion Evidence § 45 *et seq.*
[3, 4] 53 Am Jur, Trial §§ 937–940.
Right to have reporter's notes read to jury. 50 ALR2d 176.

3. TRIAL—READING TESTIMONY TO JURY—DISCRETION.

Reading back to the jury just the "testimony" of the treating physician and not his deposition used in lieu of cross-examination was proper where the jury requested to have the "testimony" read, the jury understood the difference between what was testified to at the trial and what was in the deposition, and the foreman stated that what they wanted to rehear had been read to them.

4. TRIAL—READING TESTIMONY TO JURY—DISCRETION.

Reading back of testimony from the court stenographer's notes, and the extent to which it shall be read to the jury, is primarily addressed to the sound discretion of the trial judge.

Appeal from Wayne, Charles Kaufman, J. Submitted Division 1 February 5, 1970, at Detroit. (Docket No. 5,968.) Decided September 28, 1970.

Complaint by Thomas Rumptz against Frederick P. Leahey for injuries resulting from an automobile collision. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*Blum & Sternberg, Chartered* (*Norman L. Zemke, P. C.,* of counsel), for plaintiff.

*Plunkett, Cooney, Rutt & Peacock* (*John D. Hayes,* of counsel), for defendant.

Before: LEVIN, P. J., and J. H. GILLIS and BRONSON, JJ.

LEVIN, P. J. This action arises out of a collision between automobiles driven by the plaintiff, Thomas Rumptz, and the defendant, Frederick P. Leahey.

The defendant appeals a jury verdict in favor of the plaintiff and asserts:

(1) the trial judge erred when he refused to grant the defendant's motion for a mistrial made after the

plaintiff's lawyer mentioned the name of an insurance company;

(2) when the jury requested, after it had retired to consider its verdict, that the testimony of one of the plaintiff's witnesses be read back to it, the cross-examination as well as the direct examination should have been read.

The plaintiff claimed that he suffered both neck and back injuries as a result of the accident. A physician called in behalf of the defendant testified that in his opinion the plaintiff's back complaints were not related to the accident.

On cross-examination it was brought out that the witness frequently testifies in court. The plaintiff's lawyer then attempted to show that the witness claims to be an expert on whatever the exigencies of the case require. When the witness perceived the direction of the cross-examination he said, "I don't mean to say I testify on everything". In an apparent effort to impeach that response, the witness was asked whether he had testified in cases involving kidney problems, to which he responded, "Not unless I had a urologist with me".

The following then ensued:

"*Q.* Doctor, do you recall the case over at the Workmen's Compensation Department, the case of Joseph Collins versus Michigan Mutual Liability Company?
"*A.* Do I recall it?
"*Q.* Yes. I was the counsel for plaintiff, Doctor, and you were doing an examination—."

At this point the defendant's lawyer objected on the ground that plaintiff's lawyer was testifying, not on the ground that the name of an insurance company had been mentioned. The objection was overruled. The questioning resumed.

*"Q.* Doctor, do you now recall that I represented Mr. Collins at the Workmen's Compensation Department and you represented, I beg your pardon, you examined him on the part of his employer and the liability company in that case and regarding a kidney injury? Do you recall that, Doctor?

*"A.* Mr. Blum, I can't remember the details of that case—I am not trying to avoid anything.

*"Q.* I understand that, Doctor. I am only asking if you recall the case of Joseph Collins, that that was involving a kidney.

*"The Court:* He answered the question.

*"A.* In what way did it involve the kidney?"

The defendant's lawyer interrupted and the jury was excused. He moved for a mistrial on the ground that the first reference to the Michigan Mutual Liability Company and the second reference to the "liability company" violated the statute providing that "the insurer shall not be made or joined as a party defendant, nor shall any reference whatever be made to such insurer or to the question of carrying of such insurance during the course of trial".[1]

While the cross-examination may, as the judge observed, have bordered on the impermissible, it did not transgress the line. The apparent purpose of the questions—impeachment—was entirely legitimate. The jury had already been made aware that the doctor testified in a large number of cases, sometimes for plaintiffs, more frequently for defendants. It would not follow from the fact that he testified for the liability company in the postulated case of *Collins* v. *Michigan Mutual Liability Company* that all defendants for whom he testified were insured.

Jurors know that many, perhaps most, defendants in automobile accident cases are insured. The crit-

[1] MCLA § 500.3030 (Stat Ann 1957 Rev § 24.13030). See *Felice* v. *Weinman* (1964), 372 Mich 278, 280; *Benmark* v. *Steffen* (1965), 374 Mich 155, 163, 164.

ical query is whether the defendant in the instant case is insured. The questions put to the witness in this case did not, in our opinion, convey or suggest to the jury that the defendant in this case was insured.[2]

In addition to the testimony of the defendant's medical expert witness that the back injury was not related to the accident, similar testimony was elicited from the treating physician who was called by the plaintiff as a witness.[3]  This opinion adverse to the plaintiff was expressed during the physician's pretrial deposition and was deliberately brought out during the trial on direct examination; plaintiff's lawyer knew, both from the deposition and his opponent's opening statement, that this would be stressed during cross-examination. The direct examination of the physician was completed late in the afternoon. Because he was unable to return the following day, the parties stipulated that his deposition, containing the statement damaging to the plaintiff, would be read in lieu of cross-examination.

After the jurors retired to consider their verdict, they returned and asked that the testimony of the treating physician and another of plaintiff's medical witnesses be read. This resulted in extensive discussion. It was explained to the jury that, except for the deposition of the treating physician read in lieu of cross-examination, none of the testimony had as yet been transcribed. The distinction between the typed transcript of the deposition and the untranscribed testimony was, we think, impressed clearly upon the jury.

[2] See *Savage* v. *Parts Warehouse Company* (1969), 19 Mich App 416; *Bishop* v. *Wolinski* (1969), 16 Mich App 753; *cf. Herman* v. *Ploszczanski* (1963), 369 Mich 252; *Lee* v. *Misfeldt* (1965), 1 Mich App 675; *Watroba* v. *City of Detroit* (1952), 334 Mich 182, 191, 192; *Ehlers* v. *Barbeau* (1939), 291 Mich 528, 534.

[3] There was other testimony connecting the back complaint to the accident.

The jury was asked to reconsider what it wanted read. After nearly a full hour of additional deliberation, the jury returned to the courtroom at about 3 p.m. to have the "testimony" of the treating physician read. At about 4 p.m. the foreman said, in response to an inquiry from the court, that there had been read what the jury desired to have read.

The defendant's lawyer objected that the deposition should also have been read. The objection was overruled, the judge saying that the record showed that the jury requested only the "testimony", that the jury was well aware that the deposition was used in lieu of cross-examination and that he was sure that the jury understood the difference between what was testified to at the trial and what was in the deposition and that what they wanted to rehear had been read to them.

We are persuaded that the judge did not err in so ruling. Firstly, we think the jury understood that for purposes of determining what it desired to have read the court was making a distinction between untranscribed "testimony" and the typed deposition. Secondly, and perhaps more importantly, the significant deposition testimony of the treating physician was his opinion that the plaintiff's back complaints were not accident related. This was, as previously mentioned, covered during the doctor's direct examination, which testimony was read.[4]

In *Klein* v. *Wagenheim* (1967), 379 Mich 558, 561, the Michigan Supreme Court declared that when a jury requests that testimony be read back to it the reading and the extent of reading is primarily ad-

---

[4] The transcript of the trial proceedings does not show whether the entire testimony of the treating physician was read, only that the reading began at about 3 o'clock and concluded at about 4 o'clock. However, during the argument in our Court the defendant's lawyer said that the entire testimony of the treating physician was read and we proceed on that assumption.

dressed to the sound discretion of the trial judge.[5] The Court considered the argument that it is not proper to read any testimony, unless all the testimony is read, because otherwise there would be a tendency to emphasize what is read, and rejected it, saying (p 561) : "This is not now and never has been the law in Michigan".

The defendant has not claimed that anything of importance was covered in the cross-examination that was not related during the direct examination.[6] We are satisfied that the jury's inquiry was responded to fully and with fairness to both sides and, accordingly, find no error.

Affirmed.   Costs to plaintiff.

All concurred.

---

[5] See *Gold* v. *Detroit United Railway* (1923), 223 Mich 209, 212; *People* v. *Kasem* (1925), 230 Mich 278, 288; *People* v. *Shuler* (1904), 136 Mich 161, 167; *cf. Loose* v. *Deerfield Twp.* (1915), 187 Mich 206; *People* v. *Walker* (1963), 371 Mich 599, 610 (opinion of O'HARA, J.)

[6] The defendant also complains of the failure to read back to the jury certain records of the doctor which had also been read to the jury in lieu of cross-examination. But, again, those exhibits related to facts clearly brought out during the treating physician's direct testimony.